(91 South. 790)

**CLAY v. CUMMINS.** (2 Div. 709.)

(Supreme Court of Alabama. Nov. 3, 1921. Rehearing Denied Dec. 24, 1921.)

1. Brokers 65(6)—Waiver of forfeiture of commission for concealment of facts held not to make new contract.

A waiver by the principal of his right to refuse to pay any commission because of the broker's concealment of material facts is merely an affirmance of the broker's original obligation, and not a new and independent contract.

2. Brokers 82(2)—Plea held to allege broker's refusal to assent to condition of principal's waiver of forfeiture of commission so that demurrer was properly overruled.

A plea, alleging that the broker had forfeited his right to any commission by misrepresenting the amount for which he sold the property, but that the principal had offered to waive the forfeiture on condition the broker would accept a 5 per cent. commission, and setting out in response to the offer a letter by the broker, held sufficient to allege that the broker had refused to assent to the condition on which the waiver of forfeiture of commission was offered, so that a demurrer thereto was properly overruled.

**3. Brokers ⚖65(2, 6)—Concealment of price nullifies right to compensation regardless of injury; forfeited commission is not revived by principal's execution of contract.**

A broker's breach of duty by concealing the amount for which he sold the property nullifies his right to compensation, regardless of the question of injury to his principal, and his right to such compensation is not revived nor saved by the principal's election to execute the con-tract procured by the agent, and so to enjoy its fruits and benefits.

**4. Appeal and error ⚖1068(3)—Charge requiring broker to disclose all •facts held not prejudicial under the evidence.**

In an action for a broker's commission, a charge that it was the broker's duty to disclose all facts about the business if it went too far, because the broker need disclose only such matters as might affect his principal's interest, was not prejudicial to the broker, where there was no question as to any outside matters, and the evidence showed a sufficient breach of duty as a matter of law to forfeit the broker's right to commission.

**5. Appeal and error ⚖1064(1) — Erroneous charge broker's breach of duty put end to contract held not prejudicial to broker.**

Error in charge that broker's breach of duty put end to original contract for commission, whereas in fact it merely authorized the principal to refuse to compensate the broker, was not prejudicial to the broker, in an action for his commission, since the result would be the same under either theory.

Anderson, C. J., dissenting.

Appeal from Circuit Court, Perry County; B. M. Miller, Judge.

Action by Charles C. Clay against Joseph Cummins, to recover commissions on the sale of real estate. Judgment for the defendant, and the plaintiff appeals. Affirmed. See former appeal in this case, reported in 201 Ala. at page 34, 77 South. at page 328.

The following is plea 3 as amended:

That on or about the 20th day of September, 1912, the said defendant contracted to purchase from plaintiff certain property situated in Perry county, Ala., known as the Lyons place, said contract being in writing, and thereupon entered into an agreement with the said Clay to resell the place, same being written at the end of the above-mentioned contract purchase, in words as follows:

"Clay is hereby authorized to resell said place and agrees to use his best efforts to do so at a price not less than $32.50 per acre. At $35.-00 to net Cummins $33.25.
"C. C. Clay.
"Joseph Cummins."

Defendant avers that thereafter on, to wit. the 12th day of June, 1914, he received the following telegram from plaintiff, to wit:

"Demopolis, Alabama, June 12, 1914.
"Joseph Cummins, 123 West Madison, Chicago, Ill. Can get you $32.50 per acre Lyons place. You get all you equity December 1st, Answer at once.                    C. C. Clay."

Defendant avers that said Lyons place was the property with reference to which the above set out contract with said Clay was made. He replied to said telegram as follows:

"Chicago, June 13, 1914. Mr. C. C. Clay, Demopolis, Alabama. Yes, if that is your advice. Leave little after carrying two years.
"Joseph Cummins."

He avers that on the same day he received the following telegram from plaintiff, to wit:

"Demopolis, Alabama, June 13, 1914. Joseph E. Cummins, 123 West Madison Ave., Chicago, Ill. Your telegram received have closed deal sending papers for signature.
"C. C. Clay."

Defendant avers that thereafter, on or about the 14th day of July, 1914, being at the time in Portland, Or., he received from said Clay a contract which the said Clay had executed as the agent of defendant with one George Whitney, whereby said Whitney agreed to buy and the defendant to sell the said Lyons place at a price of $37.50 per acre, instead of at the price of $32.50, as defendant had been informed by the said plaintiff; that at the time defendant sent the above set out telegram of June 13, 1914, to said Clay, agreeing to sell the said Lyons place at $32.50 per acre, Clay was defendant's agent to sell said Lyons place, and that the defendant reposed implicit confidence in the fidelity and loyalty of said Clay to him in the matter of said agency, and assented to said sale at said price upon the condition that said Clay advised it, and that he had no knowledge whatever that a better price than $32.50 as quoted to him by Clay could be obtained or that Clay expected to sell at a higher price, and that, relying upon said Clay's good faith, he assented to said sale in the belief the $32.50 was the best price obtainable for said property, and acted on the belief that said Clay was fairly and fully disclosing all the facts connected with the transaction to him.

Defendant avers, however, that when he received said contract with said Whitney he ascertained that the price which Clay had obtained was not $32.50 per acre, but $37.50 per acre, and he avers that said Clay had misled him into agreeing to sell said place for $32.50, instead of $37.50 per acre, the real price which Clay had succeeded in obtaining for the said property.

Defendant avers that by such concealment of facts or misrepresentations the said Clay had forfeited all rights to claim commissions in any sum, and had himself repudiated the original contract between the parties, but that, while he was unwilling to allow the said Clay to profit by his misrepresentations of the facts to the extent of $5 per acre, he was willing, if said Clay did not insist upon said $5 per acre arising as a profit to him in the transaction out of his wrongful act, to pay him a commission equal to that set out in the original agreement, and that he thereupon ratified the execution of the said contract by Clay with the following letter:

"Portland, Oregon, July 4th, 1914.
"Mr. C. C. Clay, Demopolis, Alabama—Dear Clay: Mrs. Cummins and myself have signed

the contract with George H. Whitney, and inclose one copy herewith. I observe that the price is $37.50 and not $32.50. We have signed and are forwarding the contract upon the terms of the written agreement between you and myself respecting the sale of the property and your commissions. I expect to reach home July the 13th.

"Yours truly, Joseph Cummins."

That the said Clay declined the offer which the defendant thus made him, and refused to receive the said commission offered, writing him under date of July 11th, as follows:

"We note you say that, 'We have signed and are forwarding the contract upon the terms of the written agreement between you and myself respecting the sale of the property and your commissions.' We do not exactly understand this, as we closed this deal on the basis of our telegram to you and your answer thereto.".

To this telegram Cummins replied to Clay under date of July 15, 1914, as follows:

"My letter from Boise [meaning Portland] referred to the contract made with you at the time I purchased the Lyons place, giving you the authority to resell it and providing for a commission of 5 per cent. provided the sale was to net me not less than $32.50. In the telegrams exchanged about June 12th and 13th, to which you refer, you named the price of $32.50, whereas it appears that the price is $37.50. I know of no reason why I should pay you 13⅓ per cent. commission. I confirm the letter which accompanied the contract, viz.: That it is signed and delivered upon the basis of our agreement—a brokerage commission of 5 per cent. to you for perfecting a sale."

To this letter Cummins received from Clay the following reply.

"July 15, 1914.

"Mr. Joseph Cummins, Chicago, Ill.—Dear Sir: Your letter of the 13th inst. received and noted. I made the trade for sale on the basis of $32.50 net to you, and thought from your telegram to me that you thoroughly understood that you were to get $32.50 net, and we were to get all over and above that amount. I explained to you fully in my letter that I had to divide commissions with another party and for this reason and for the further reason that it was up to me to cash in a deferred payment and pay you your part on December 1st. I have felt that this was a liberal proposition to you. If you do not understand this trade this way and are not willing for the trade to go through this basis, just say so, and we will have to call the matter off. It seems to me, however, you ought long ago to have advised me that this was not satisfactory and the matter would have been dropped. I have no desire to urge to sell at less than you want to, but when I wired you that I would dispose of the property at $32.50 per acre to you and that I would cash in the proposition and pay you part in full on December 1st, and you wired me to go ahead, I did not think that there could be any doubt as to the understanding. Unless you are willing to close this trade on the above lines, there is no need for you to sign the deed. On the receipt of this letter, please wire me what is your wish in the premises.

"Yours very truly, C. C. Clay."

The defendant avers that the plaintiff, having thus refused to accept the said offer of the defendant, instituted this action in the circuit court of Perry county, Ala., wherefore, defendant says he owes plaintiff nothing.

Replication 2 is as follows:

(2) That before defendant ratified and confirmed said contract of sale, or became liable thereunder, he was fully informed by plaintiff of the terms and conditions under which said sale was made and the facts connected therewith, and with full and complete knowledge of all said facts he ratified and confirmed the same.

The following charges were given at the request of the defendant:

(3) The jury are instructed that an agent to sell owes to his principal the duty to fully disclose to his principal all facts affecting any transaction with his principal's property, and if the agent fails to do so, and by concealment attempts to obtain any advantage of his principal, he thereby forfeits all right to compensation as agent in such transaction.

(2) If you believe from the evidence that Clay sent Cummins a telegram stating that he could get $32.50 per acre for the Lyons place, when in fact he had obtained $37.50, intending himself to take the $5 difference, then I charge you that no contract arose between Clay and Cummins out of the telegram, and the original contract was at an end, and Clay would be entitled to recover nothing, unless you believe that Clay accepted Cummins' offer to pay him 5 per cent. If Clay did not accept said offer, he is not entitled to recover anything.

"B. The court charges the jury that an agent owes his employer a duty to act with the employer in absolute good faith, and to disclose all facts about the business to the employer; and, if the agent fails in these things, he is guilty of a fraud, and not entitled to recover commission for his service as agent.

Henry McDaniel, of Demopolis, and J. J. Mayfield, of Montgomery, for appellant.

Plea 3 set up no defense to the action, and the demurrers should have been sustained. The replications were complete answers thereto, and the demurrers thereto should have been overruled. 201 Ala. 34, 77 South. 328. On the same authority, it must be held that the plaintiff was entitled to the affirmative charge.

Evins & Jack, of Greensboro, and A. W. Stewart, of Marion, for appellee.

The agent was guilty of such disloyalty and fraudulent conduct as to destroy his right to all commissions under any contract. 65 Ala. 106; 84 Ala. 99, 4 South. 180; 7 Ala. App. 358, 62 South. 254; 201 Ala. 34, 77 South. 328; 19 Cyc. 227; 112 Pa. 475, 3 Atl. 858; 76 Ark. 395, 88 S. W. 959; 2 Neb. (Unof.) 853, 90 N. W. 635. This fully appears from plea No. 3. Authorities supra.

SOMERVILLE, J. This appeal results from a second trial of the cause, following a reversal of the judgment rendered in fa-

vor of the appellee on a former trial. Clay v. Cummins, 201 Ala. 34, 77 South. 328.

On the former appeal no decision was made as to the rulings of the trial court on the demurrer to defendant's plea No. 3, and to plaintiff's replication thereto, the reversal of the judgment being based upon the giving of the affirmative charge for defendant, and upon a holding by this court that on the whole evidence the plaintiff was entitled to recover a commission of 5 per cent., amounting to $900.

The theory upon which the latter conclusion was reached was that defendant's provisional ratification of the sale made by plaintiff, and his offer to pay plaintiff a commission of 5 per cent., under the terms of the original contract between them, followed by his execution of the contract of sale as made, reinstated the obligations of the original contract, although plaintiff may, by concealment and bad faith, as charged in the pleas, have forfeited his right to compensation thereunder.

On the former trial there was no plea setting up plaintiff's rejection of defendant's provisional offer to proceed under the original contract and to compensate him for making the sale according to the terms therein specified; and, though the evidence then was the same as it is now, including plaintiff's alleged letter of rejection, neither the fact of such a rejection nor its legal effect was considered by this court on the former appeal.

[1] In the opinion on that appeal (201 Ala. 34, 77 South. 328) the duty of good faith on the part of an agent was fully discussed, and it was held, in line with all the authorities, that bad faith in the execution of the agency forfeits all right to compensation. It was further held that the principal may waive this protection given him by the law, if he sees fit to do so with a full knowledge of the facts, and will be presumed to have done so if he does not repudiate his obligation within a reasonable time after he acquires knowledge of his agent's culpability.

From these principles it seems clear that the effect of such a waiver is merely an affirmance of the principal's original obligation to pay his agent for the service rendered by him, and not to make a new and independent contract.

Plea 3, as amended, sets up plaintiff's breach of duty in that he was guilty of bad faith in not informing defendant of the fact that the purchaser he had found was willing to pay, and had offered to pay, $37.50 per acre for the land. This part of the plea was clearly sustained by the undisputed evidence in the case. The plea further shows that defendant provisionally waived his right to refuse any compensation to plaintiff, after he was informed of the facts, but avers that the waiver was not effective because the condition upon which it was made was rejected by plaintiff. This averment rests upon the correspondence between the parties, and more particularly upon the meaning and effect of plaintiff's letter of July 15th.

The demurrer challenges: (1) The sufficiency of the plea to show a rejection by plaintiff of defendant's conditional waiver; and (2) the efficacy of such a rejection to nullify the waiver made by defendant, or to defeat plaintiff's claim for compensation under the original contract.

[2] We are of the opinion, after very thorough consideration, that the letter referred to, in connection with the other correspondence set out in the plea, may support the conclusion of the plea, charged as an inference of fact, that plaintiff never assented to defendant's proposal, but in fact refused to do so; and that such refusal, if it is to be inferred as a fact, nullified defendant's proposal and avoided the operation of his waiver of plaintiff's breach of duty.

[3] As we understand the law, an agent's breach of duty—such a breach as is here shown—nullifies his right to compensation regardless of the question of injury to his principal; and his right to compensation is not revived nor saved by reason of the fact that his principal elects to execute the contract of sale initiated by the agent, and so enjoys its fruits or benefits.

We are further of the opinion that on the evidence adduced, including the fact that plaintiff has claimed in this suit the right to recover outside of the terms of his original contract with defendant, the trial judge properly submitted the issue of plaintiff's acceptance or rejection of defendant's proposal for determination by the jury, in his oral instructions to them, and properly stated that upon that question plaintiff's right to recover would depend.

[4] The special written charges, given to the jury at defendant's request, are in substantial accord with our views as to the law of the case. It seems that charge "B" goes too far in requiring an agent to disclose "all facts about the business" to his employer, since ordinarily he need disclose only such matters as might affect his principal's interests. However, there was no question here as to any outside matters; and, as we have pointed out, the evidence showed a sufficient breach of duty, as a matter of law, to forfeit plaintiff's right to a commission. Hence the inaccuracy noted was academic merely, and without prejudice to plaintiff.

[5] So, also, charge 2 contains the inaccurate statement that the breach of duty imputed to plaintiff would *put an end* to the original contract, whereas it in fact merely authorized plaintiff to refuse to compensate plaintiff for his services thereunder. But under the evidence, and in view of the principles of law which we have applied, the

statement criticized is not material, since the practical result would be the same under either theory of the law.

We think the material issues in the case were properly submitted to the jury, and we find no error in the record to justify a reversal of the judgment based upon their findings.

The judgment will therefore be affirmed. Affirmed.

McCLELLAN, GARDNER, and THOMAS, JJ., concur.

SAYRE, J., concurs in the conclusion. ANDERSON, C. J., dissents. MILLER, J., not sitting.