MADDOX, Justice.
This appeal involves the question of whether there was evidence that a real estate broker was the “efficient cause” in procuring a purchaser for a particular tract of land, so that she would be entitled to a commission from the sellers. The trial court entered a summary judgment on behalf of the sellers of the property. We reverse and remand.
Genell V. McLeod, plaintiff/appellant, is a licensed real estate broker in Mobile. John Howard Wilson and his wife Laurel Wilson, defendants/appellees, are residents of Baldwin County. The facts indicate that sometime prior to March 1, 1980, Joseph L. Meaher, an employee of Davis and Meaher, Inc., a company that provides forestry related services and has offices in Mobile, informed McLeod that the Wilsons were interested in selling a 113-acre tract of land, and that they were willing to pay a real estate commission of ten percent if a buyer for the property could be found.
McLeod contacted a real estate agent named Steve Wilson (who is unrelated to the sellers) to assist in locating a buyer for the property.. Steve Wilson, accompanied by Ronald H. McLeod, husband of the broker, contacted Anton Leiterman, president of Leiterman Farms, Inc., concerning the availability of the Wilsons’ property and negotiated an offer to purchase the property at a gross price of $170,000. Anton *281 Leiterman signed a standardized offer to purchase, with an added notation that title to the property would be taken in the name of Leiterman Farms. A sentence in the offer immediately preceding the signature block contained the following provision regarding payment of a real estate commission: “This price includes your commission of 10% of the sales price of the property, which amount you are to deduct from the cash payment at time of closing of the sale.”
After reviewing Leiterman’s offer, the Wilsons made several changes: the price was changed to a gross amount of $188,633 and a provision was inserted which stated that closing was to be within thirty days of the acceptance of the offer. These changes were accepted by Leiterman and he made a cash deposit of $1,000 as earnest money. The balance of $187,633 was to be paid at closing. The date of Leiterman’s original offer was March 1, 1980; the date of the Wilsons’ modification and acceptance was March 3, 1980.
On May 22, 1980, obviously more than thirty days after the acceptance of the offer, the Wilsons’ attorney contacted McLeod by letter and requested one-half of the earnest money. In the letter the attorney stated that it was the Wilsons’ understanding that Leiterman did not have on hand the amount of the purchase price. The letter concluded: “Our client has entered no exclusive listing on this property. If you have a prospective purchaser who has funds readily available, you may wish to submit an offer to purchase directly to Mr. Wilson.” On June 23, McLeod forwarded a cheek in the amount of $500, payable to John H. Wilson, who later returned the check to McLeod through the office of Davis and Meaher, Inc.
Subsequent to the unexplained return of the check to McLeod by Wilson, she learned that the Wilsons had executed a deed on October 9, 1980, conveying the 113 acres to Leiterman Farms. While the purchase price was not recited in the deed, Leiterman, when later deposed, testified that the approximate purchase price was $169,500.
, After the Wilsons refused to pay McLeod a commission on the sale of the property, McLeod filed suit. The trial court ordered two other brokers, Steve Wilson and Raymond McConnell, added as plaintiffs, but neither claims a commission. Summary judgment, based upon the pleadings and the depositions of several witnesses, was entered by the trial court in favor of the Wilsons. McLeod’s motion for reconsideration was denied and she appealed.
Summary judgment is appropriate when there is no genuine issue of a material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Houston v. McClure, 425 So.2d 1114, 1116 (Ala.1983). Where there is a scintilla of evidence supporting the position of the nonmoving party, however, a summary judgment is inappropriate. Legg v. Kelly, 412 So.2d 1202, 1204 (Ala.1982); Oliver v. Taylor, 394 So.2d 945, 946 (Ala.1981).
McLeod asserts that irrespective of the thirty-day closing deadline, her commission was earned when the Wilsons accepted Leiterman’s offer to purchase. The authority for this proposition is found in the early case of Bailey v. Padgett, 195 Ala. 203, 70 So. 637 (1915):
“A real estate agent or broker employed to make a sale of lands on specified terms is entitled to his commission or compensation, when he procures a person who is able, ready, and willing to buy on terms specified and the vendor accepts him, though the purchaser may afterwards decline.”
195 Ala. at 208, 70 So. at 639. More recently, the Court has stated:
“The general rule regarding a broker’s right to receive a commission is that unless the seller and the broker have agreed to the contrary the broker is entitled to receive a commission when he procures a purchaser ready, willing, and able to buy on the seller’s terms, even though the sale is never consummated. *282 Espalla v. Lyon Co., 226 Ala. 235, 146 So. 398 (1933); O’Neal v. Plowden, 220 Ala. 317, 124 So. 882 (1929); Alabama Fuel & Iron Co. v. Adams, Rowe & Norman, 216 Ala. 403, 113 So. 265 (1927); Malone v. Dillard, 212 Ala. 361, 102 So. 705 (1925).”
Alabama Fuel Sales Co. v. Vulcan Energy Resources, 339 So.2d 1007, 1009 (Ala.1976). While it is not generally necessary that the broker produce a purchaser whom the seller knows to be ready, willing, and able to buy if the purchaser is in fact ready, willing, and able to buy, Smith v. Sharpe Real Estate Co., 200 Ala. 666, 667, 77 So. 40, 41 (1917), acceptance by the seller is conclusive evidence of the fact that the purchaser was able, ready and willing, thereby dispensing with the necessity of a factual determination on the issue. Handley v. Shaffer, 177 Ala. 636, 653, 59 So. 286, 291 (1912).
The Wilsons contend, however, that since the property was sold six months after the expiration of the offer and acceptance and not during the pendency of the agency, it was incumbent upon McLeod to show that her conduct was the “efficient cause” of the sale. As authority for this proposition, the Wilsons cite the following language of Gulf Trading Co. v. Radcliff, 216 Ala. 645, 114 So. 308 (1927).
“In cases where the owner sells to his agent’s client pending the agency, and in cases of any fraudulent device to evade commissions, and still reap the fruits of his labors, the fact that the owner does sell to such client is sufficient evidence that he was ready, able, and willing to purchase. Culver v. Gambill Realty Co., 214 Ala. 84, 107 So. 914; DeBriere v. Yeend Bros. Realty Co., 204 Ala. 647, 86 So. 528; Handley v. Shaffer, 177 Ala. 636, 59 So. 286.
“But a sale by the owner after the expiration of the time limit is not subject to this rule. Because a purchaser was ready to purchase at a later date does not prove he was ready during the pend-ency of the agency. In such case, the plaintiff must show his services were the efficient cause of the purchase.”
216 Ala. at 655, 114 So. at 317. Under the circumstances of the instant case, we agree with the sellers that since the sale of the property was consummated some six months after the agency had expired, it was necessary for McLeod to prove that her conduct, or the conduct of her sub-agent, see Mellos v. Silverman, 367 So.2d 1369, 1374 (Ala.1979), was the “efficient cause” of the sale.
“In determining whether a broker has earned a commission by procuring a purchaser, what amounts to procurement is a question of fact, and it is enough that the efforts of the broker, acting upon the purchaser, are the efficient cause of his offer to purchase; it being unnecessary that such efforts be the sole cause.” Bailey v. Padgett, supra, 195 Ala. at 207, 70 So. at 638. (Emphasis added.)
We find that there was at least a scintilla of evidence that McLeod or her subagent was a procuring cause of the sale of the land to Leiterman Farms; therefore summary judgment was inappropriate. See Foote v. Moore, 342 So.2d 906, 909; Alabama Fuel & Iron v. Adams, Rowe & Norman, 216 Ala. 403, 407, 113 So. 265, 269 (1927). This is particularly so in view of the facts of this case, especially those contained in the deposition of Anton Leiter-man, the buyer.
Although the sale of the property was closed six months after the offer to purchase expired, the terms of the sale were essentially the same as the terms negotiated by Steve Wilson when Leiterman made his initial offer to purchase in March 1980. In his deposition, Leiterman stated that he had been unaware that the Wilson property was for sale until Steve Wilson and the broker’s husband visited him to see if he was interested in purchasing the property. Although Leiterman stated under oath that he and his sons, who were active in the family business, desired to purchase the property the entire time from March until the closing and that the delay in the closing was due to the fact that the local savings *283 and loan association lacked sufficient lending capacity to loan the corporation the $2,300,000 needed to consolidate all the corporation’s debts and to purchase the property, he also testified that they could have borrowed the entire $187,633 in March, but “[t]he boys figured it was too much, that’s all.” When deposed, Leiterman testified as follows:
“Q [H]ow did you first become aware that the property could be bought?
“A They come out there themselves.
“Q They told you about it, that it could be bought?
“A They come out, Steve Wilson and McLeod. They come out there together and they were working together.
“Q That’s the first time that you knew that you might be able to buy that property from Mr. Wilson? .
“A Yeah, they wanted that doggone commission. We just got around that and bought it directly from Mr. Wilson.”
Summary judgment was improperly granted; therefore, the judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.